ANITA STEBURG (SBN: 245933)
STEBURG LAW FIRM
1798 Technology Drive, Suite 258
San Jose, CA 95110
Tel.: (408) 573-1122
Fax: (408) 573-1126

Attorney for Debtor, Zachary DeVine

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| In re: | CHAPTER 13 |
|---|---|
| Zachary DeVine, | Bankruptcy Case No. 08-54055 ASW |
| Debtor. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CONTEMPT ORDER AGAINST BMW BANK OF NORTH AMERICA DBA BMW FINANCIAL SERVICES AND METRO COLLATERAL RECOVERY SPECIALIST RE: VIOLATION OF DISCHARGE INJUNCTION** |

Plaintiff, Zachary DeVine, by and through his counsel, hereby moves the court for an award of damages against Defendants, BMW Bank of North Americas and Daybreak Metro Collateral Recovery Specialists, for a for violations of the discharge injunction. Debtor move the court for an Order for Creditor to pay debtor's actual damages, legal costs and attorney fees, emotional distress damages, punitive damages and such other and further relief as the court deems proper.

1. This court has subject matter jurisdiction to hear this motion because it arises from and is related to the above captioned case under Title 11. 28 U.S.C § 1334.
2. This is a core proceeding pursuant to 28 U.S.C. section 157(b)(2), because it involves a matter concerning the administration of the estate, giving this court personal

jurisdiction. This court thus has personal jurisdiction over the parties in this case. 28 U.S.C. § 157

3. Venue lies in this district pursuant to 28 U.S.C., section 1391(b).

4. A motion for an order to show cause is the proper procedure to request damages for violation of the permanent injunction provided by 11 U.S.C. § 524(a). 11 U.S.C. § 105(a); *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 508 (9th Cir. 2002).

5. "Motions for contempt are ordinary contested matters and need not involve an application for an Order to Show Cause." *In re Stasz,* 387 B.R. 271, 275 n.6 (B.A.P. 9th Cir. 2008).

6. Zachary DeVine ("Movant") is the debtor pursuant to Title 11 of the United States Bankruptcy Code.

7. BMW Bank of North America ("Respondent") is a creditor as defined by 11 U.S.C., section 101(10) and held a claim ("Claim") as defined by 11 U.S.C., section 101(5), in Movants' bankruptcy case.

8. Debtor believes that Daybreak Metro Collateral Recovery Specialists is an agent of BMW Bank of North America.

9. On July 28, 2008, Movants filed for relief under Chapter 13 of the United States Bankruptcy Code. BMW Bank of North America was listed on Schedule D as a secured creditor and received notice of Movants' bankruptcy petition filing from this Court. Exh. 1. The vehicle was listed on Schedule B of personal property. Devin Derham Burk was duly appointed as trustee in the case.

10. On July 28, 2008, movant filed a mailing matrix with the Bankruptcy Court that listed BMW Financial Services at BMW Financial Service's consumer correspondence address. Exh. 2.

11. On July 29, 2008, movant filed a Chapter 13 Plan with the Bankruptcy Court that included payments to BMW Financial Service through the Plan. Exh. 3.

12. On August 9, 2008, the Bankruptcy Noticing Center mailed a copy of the Notice of Chapter 13 Bankruptcy, Meeting of Creditors and Deadlines. Exh. 4.

13. On August 9, 2008, the Bankruptcy Noticing Center mailed a copy of the Chapter 13 Plan to the creditors listed in the creditors matrix.

14. On September 17, 2008, the Chapter 13 Plan was confirmed and the Order confirming the plan was signed on September 22, 2008.

15. On September 22, 2008, BMW Bank of North America dba BMW Financial Services filed a claim in the Chapter 13 case.

16. No creditor including BMW Financial Services or BMW Bank of North America objected to the Chapter 13 Plan.

17. No creditor including BMW Financial Services or BMW Bank of North America objected to the movant's discharge.

18. On September 14, 2011, this Court entered an order discharging all of movant's dischargeable debts. Notices were sent by the Bankruptcy Noticing Center to the creditors. Exh. 5. BMW Financial Services received notice of the bankruptcy discharge.

19. Pursuant to the Chapter 13 Standing Trustee's Final Report and Account, BMW Bank of North America/BMW Financial Services received $28,852 in principal payments and an additional $3,469.34 in interest through the Chapter 13 Plan.

20. On December 22, 2012, an individual from Daybreak Metro Collateral Recovery Specialists showed up at the movant's home. The employee attempted to tow and repossess the vehicle which was parked in front of movant's home.

21. The movant was not home but his wife, Rita DeVine, was home with another family member, Nathaniel DeVine.

22. Rita DeVine went down to the parking place and attempted to find out what was happening. The employee of Daybreak Metro Collateral Recovery Specialists presented her with his card. The employee of Daybreak Metro made a scene by using

loud voice that could be heard by the DeVine's neighbors and made statements such as "This is what happens when you don't pay your bills" and other general allegations made to embarrass, intimidate and humiliate the movants' wife, Rita DeVine.

23. Rita DeVine informed the employee of Daybreak Metro Collateral Recovery Specialists that there must have been some mistake since the loan had been satisfied through a Chapter 13 Bankruptcy and BMW Financial Services had been paid in full through the Chapter 13 Plan. Rita DeVine showed a copy of the Discharge Order to the employee.

24. Even with that knowledge, the employee of Daybreak Metro Metro Collateral Recovery Specialists informed Rita DeVine that the vehicle was being repossessed because BMW Financial Services was owed $4,900.

25. Throughout the process of repossessing the vehicle, the employee from Daybreak Metro Collateral Recovery Specialists followed Rita DeVine to and from her home, made a scene to attract the neighbors' attention, made statements to intimidate and embarrass the DeVines and, ultimately, he towed the vehicle.

26. Upset, humiliated and not knowing what else to do, Rita DeVine contacted her husband, Zachary DeVine, the movant. Zachary DeVine was on a vacation in the Sierra Nevada mountains when the vehicle was repossessed. Once Zachary DeVine received the phone call, he cancelled the remainder of his trip and drove through an extreme snowstorm in the Sierra Nevada mountain range to return home.

27. Zachary DeVine called BMW Financial Services and was informed that the vehicle was repossessed as a collateral for an unpaid debt of $4,827.74.

28. The DeVines contacted the police on December 22, 2012 to report the vehicle stolen. Officer Cooper responded and searched the records related to the vehicle. He informed the DeVines that there was not anything he could do as BMW Bank of North America was the valid lienholder per the DMV records. This was the first time the movant realized that the lien had not been released once the loan had been paid off.

29. Due to the holidays, movant could not reach a live person and could only access the automated phone system of BMW Financial Services. Zachary and Rita DeVine spent the holiday season trying to obtain the funds which BMW Financial Services had informed them they owed.

30. Instead of enjoying the holidays with a family member who was likely celebrating his last Christmas, the DeVines were stressed and their family was concerned about their financial situation and the extended family was trying to help the DeVines come up with ideas where they could obtain the necessary funds. The holiday season was not enjoyable due to the stress and worry the movant and his wife endured.

31. During the busy holiday season, the movant and his wife shared a vehicle and lost opportunities that two vehicles afforded them and was forced to limit their choices since they had to share a vehicle.

32. On or about December 27, 2012, the movant received correspondence from BMW Financial Services stating that the vehicle was repossessed as collateral for an unpaid debt.

33. Debtor's counsel had numerous phone calls with BMW Financial Services and Daybreak Metro Collateral Recovery Specialists to arrange the return of the vehicle.

34. On or about December 28, 2012, the vehicle was returned without notice at an undisclosed location other than the residence which it was taken.

35. The United States Bankruptcy Code provides that the collection demand activity of Respondent was illegal, as follows:

> A discharge in a case under this title –
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived

11 U.S.C. § 524 (a)(2).

36. Violation of the discharge injunction "allows an aggrieved debtor to obtain compensatory damages, attorneys' fees, and the offending creditor's compliance with the discharge injunction." *Walls v. Wells Fargo Bank, N.A.* (supra), 276 F.3d. at 507.

37. Movant's debt was discharged by Order of this Court.

38. Under the contract between movant and the secured lienholder, the lienholder can only repossess the vehicle if there is a default. However, the contract was paid through the Chapter 13 Plan and no arrearages were owed. Therefore, the secured lienholder breached the contract with the movant. Additionally, in every contract the parties must act in good faith. By unlawfully repossessing the vehicle when there was no default is a failure to act in good faith.

39. Additionally, the secured creditor has a statutory duty to release the lien within 30 days after the lien is satisfied. The secured creditor failed to satisfy its statutory duty and release the lien within the time allowed by statute. The lien was finally released after the vehicle had been returned to the movant, over a year after the bankruptcy had been discharged.

40. The movant and his wife were financially vulnerable.

41. The practices of the creditor and its agent, Daybreak Metro Collateral Recovery Specialists, has resulted in a substantial amount of undue frustration, anxiety and mental anguish or distress on the part of movant and his wife, which is more than fleeting and inconsequential, and which is substantiated by the facts of this case but also manifested itself in the following ways: anxiety, sense of dread, sense of failure, significant amount of stress, a sense of embarrassment and discomfort that is greater than the general level of embarrassment and discomfort felt in filing bankruptcy or for the inability to pay a debt or bill.

42. The existence of the bankruptcy and/or discharge was known by the secured creditor in that the existence of the bankruptcy or injunction was made aware through the multiple notices it received during the course of the bankruptcy. There is no doubt that the secured lender did indeed know about movant's bankruptcy and discharge.

43. The acts described on the part of the secured lender and its agent were intentional, meaning what is relevant is not the intent to violate the discharge injunction, but rather the intent to commit the act that violated the discharge injunction.

44. The movant seeks all damages to be awarded to him due to the injuries caused by Defendant and its actions and collection practice.

**WHEREFORE,** Movants pray for relief as follows:
- A. Declaratory relief that the secured creditor is in civil contempt of this Court by violating the discharge injunction;
- B. Actual damages to cover any loss, any out of pocket expenses or costs incurred, including the value of their personal time to in having to deal with the conduct and actions of the secured lienholder in an amount to be determined at the hearing on this matter;
- C. Damages to compensate the movant for any missed opportunities such as his early return from a winter vacation and the loss of the vehicle while it was in the control of the secured lienholder in the amount of $5,000;
- D. Emotional distress damages to movant in the amount of $10,000;
- E. Punitive damages to movant in the amount of $10,000;
- F. Sanctions for violating the discharge injunction as reasonable attorneys' fees of in an amount to be determined at the hearing on this matter; and
- G. Such other and further relief as the Court may deem just and proper.

Dated December 21, 2013 /s/ Anita L. Steburg
By: ANITA L. STEBURG,
Attorney for Zachary DeVine